1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    STEADFAST INSURANCE COMPANY,            Case No.  21-cv-02756-JSC

          Plaintiff,
8
                                             **ORDER RE: MOTION TO DISMISS,**
9         v.                                 **AND ORDER TO SHOW CAUSE**

10   ESSEX PORTFOLIO LP,                      Re: Dkt. No. 13

          Defendant.
11

12

13        Before the Court is Steadfast's motion to dismiss Essex's counterclaim in this insurance

14   coverage dispute action.[1]  (Dkt. No. 13.)[2]  After carefully considering the parties' briefing, and

15   having had the benefit of oral argument on August 19, 2021, the Court GRANTS the motion.  For

16   related reasons, the Court ORDERS Steadfast to SHOW CAUSE as to why its declaratory

17   judgment claim should not be dismissed without prejudice as unripe.

18                                  **BACKGROUND**

19        BRE Properties, Inc. undertook a development project in San Francisco, California and

20   purchased insurance from Steadfast.  Two firms, McLarand Vasquez Emsiek & Partners Inc. and

21   Cross 2 Design Group, provided design services for the project.  BRE later transferred the project

22   to Essex.  In May 2016, Essex notified the design firms about potential problems with the

23   project's roofs, and then contacted Steadfast about the issues in September 2016.  In April 2019,

24   Essex filed suit against the design firms for breach of contract and negligence in designing the

25

26   _____

27   [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 7, 11.)
28   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    project.  *See Essex Portfolio, LP v. Suffolk Constr. Co., Inc.*, No. CGC19575609 (Cal. Super. Ct.

2    filed Apr. 30, 2019).[3]  Essex informed Steadfast about the lawsuit in August 2020.

3         The insurance policy between Steadfast and BRE includes the following:

> The Company shall indemnify you for "loss" in excess of the "Design Professional's Insurance", subject to the provisions of the Limit of Liability and "Self Insured Retention" designated in Items 3. and 4. of the Declarations, respectively, provided that:
>
> 1. The "Protective Indemnity Claim" is first made by you against the "Design Professional" under contract to you and reported in writing by you to us during the Policy Period or Extended Reporting Period, if applicable;
>
> 2. The "Protective Indemnity Claim" arises out of a negligent act, error or omission of the "Design Professional" in the rendering or failure to render "Professional Services" and the negligent act, error or omission took place on or after the "Retroactive Date" and before the end of the "Policy Period"[.]

12   (Dkt. No. 1 ¶ 21; Dkt. No. 8 at 4–5 ¶ 21.)  The policy defines "Design Professional" as "those

13   persons or entities or successors professionally qualified to perform 'Professional Services' either

14   itself or through the services of a subcontractor or subconsultant at any tier."  (Dkt. No. 1 ¶ 22.)[4]

15   "Design Professional's Insurance" means "all professional liability policies insuring the 'Design

16   Professionals' under contract to you."  (Dkt. No. 1 ¶ 23; Dkt. No. 8 at 5 ¶ 23.)  "Design

17   Professional's Insurers" means "all the Insurers providing insurance to the 'Design Professionals'

18   under contract to you."  (Dkt. No. 1 ¶ 24; Dkt. No. 8 at 5 ¶ 24.)  "Loss" means:

> [T]he amount you are legally entitled to recover from a "Design Professional(s)" either by adjudication by a court of competent jurisdiction, arbitration or settlement or any other method of dispute resolution to which we agree in writing.  Such "Loss" must be the result of a negligent act, error or omission on the part of the "Design Professional(s)" in the rendering of or failure to render "Professional Services".  "Loss" does not include any amounts deemed uninsurable by law.

---

[3] The Court grants Steadfast's request for judicial notice of the case management statement in the underlying action, (Dkt. Nos. 13-2, 13-3), as a matter of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

[4] Essex's answer omits paragraph 22.  (*See* Dkt. No. 8 at 5.)  Based on the context, the Court assumes only for purposes of the motion to dismiss that Essex admits the allegations in paragraph 22 of Steadfast's complaint.  (*See* Dkt. No. 1 ¶ 22.)

2

1    (Dkt. No. 1 ¶ 25; Dkt. No. 8 at 5 ¶ 25.)  "Protective Indemnity Claim(s)" means "a written demand

2    by you against the 'Design Professional' under contract to you seeking a remedy and alleging

3    liability or responsibility on the part of such 'Design Professional' arising from a negligent act,

4    error or omission in the performance of 'Professional Services'."  (Dkt. No. 1 ¶ 28; Dkt. No. 8 at 5

5    ¶ 28.)  The policy includes the following "Notice of Protective Indemnity Claim" provision:

6    
7    > As a condition precedent to Coverage Part A – Protective Indemnity
> Claims of this policy, you shall provide us with notice in writing of a
> "Protective Indemnity Claim" at the same time that you make such
> "Protective Indemnity Claim" against a "Design Professional".
8    

9    (Dkt. No. 1 ¶ 29; Dkt. No. 8 at 5 ¶ 29.)  Finally, the policy states under "Action Against Us":

10   
11   > As to Coverage Part A - Protective Indemnity Claims, no legal action
> may be brought against us until there has been full compliance with
> all the terms and conditions of this policy and both the "Design
> Professional's" liability and the amount of the "Design
> Professional's" obligations to pay have been finally determined either
> by judgment against the "Design Professional" after an actual trial,
> adjudication or arbitration or by your written agreement with the
> "Design Professional" with our prior approval.  No person or
> organization has a right under this policy to bring us into any action
> to determine our liability or the "Design Professional's" liability.
12   
13   
14   
15   

16   (Dkt. No. 1 at 24–25; *see* Dkt. No. 8 at 13 ¶ 10.)

17       Steadfast filed this action against Essex, seeking a declaratory judgment that coverage is

18   precluded because a "Protective Indemnity Claim" was not timely made or reported and BRE

19   failed to obtain Steadfast's consent to assign BRE's interests to Essex.  (Dkt. No. 1 ¶¶ 33–53.)

20   Essex answered and counterclaimed for breach of insurance contract and breach of the implied

21   covenant of good faith and fair dealing.  (Dkt. No. 8 at 11–15 ¶¶ 1–18.)  Steadfast moves to

22   dismiss the counterclaim as unripe.  (Dkt. No. 13.)  Essex opposes and requests that if the Court

23   dismisses Essex's counterclaim it also *sua sponte* dismiss Steadfast's complaint or stay both the

24   complaint and counterclaim.  (Dkt. No. 17.)

25                                   **DISCUSSION**

26       "The constitutional component of ripeness is a jurisdictional prerequisite."  *United States*

27   *v. Antelope*, 395 F.3d 1128, 1132 (9th Cir. 2005).  "The Article III case or controversy

28   requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, . . . that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    claims be 'ripe' for adjudication. . . . [R]ipeness is a means by which federal courts may dispose

2    of matters that are premature for review because the plaintiff's purported injury is too speculative

3    and may never occur." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

4    2010) (citations omitted).  Ripeness may be properly raised in a Rule 12(b)(1) motion to dismiss.

5    *Id.*  "The central concern of the ripeness inquiry is whether the case involves uncertain or

6    contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* at

7    1122–23 (internal quotation marks and citations omitted).  Therefore, the doctrine is "designed to

8    prevent the courts, through avoidance of premature adjudication, from entangling themselves in

9    abstract disagreements."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th

10   Cir. 2000) (internal quotation marks and citation omitted).

11   **I.      Essex's Breach of Contract Claim**

12            Essex's counterclaim alleges that Steadfast has breached the contract by "wrongfully

13   refusing to provide the full benefits of coverage," specifically by "inform[ing] Essex that there

14   was no coverage under the Policy" related to Essex's lawsuit against the design firms and by

15   "refus[ing] to provide Protective Indemnity Claim coverage promised by" the policy.  (Dkt. No. 8

16   at 12–13 ¶¶ 11, 7, 8.)

17            The breach of contract claim is unripe because the conditions precedent to Steadfast's

18   performance have not been satisfied.  For a Protective Indemnity Claim, the policy states that

19   Steadfast "shall indemnify you for 'loss' in excess of the 'Design Professional's Insurance.'"

20   (Dkt. No. 1 ¶ 21; Dkt. No. 8 at 4–5 ¶ 21.)  A "loss" requires an adjudication or a settlement with

21   the Design Professionals.  (Dkt. No. 1 ¶ 25; Dkt. No. 8 at 5 ¶ 25.)  Since Essex has not alleged and

22   cannot allege that it has obtained a judgment or settlement against the Design Professional, there

23   has been no "loss" within the meaning of the insurance policy.  Essex's allegations do not

24   establish that it is *currently* "legally entitled to recover" any "amount" from the Design

25   Professionals.  (Dkt. No. 1 ¶ 25; Dkt. No. 8 at 5 ¶ 25.)  Thus, Steadfast's duty to "indemnify" for

26   "loss" has not arisen.  And the duty may never arise: Essex might not prevail in its suit against the

27   Design Professionals, or it might win a judgment that is fully covered by the Design Professionals'

28   Insurance with no "excess" for Steadfast to indemnify.  (Dkt. No. 1 ¶ 21; Dkt. No. 8 at 4–5 ¶ 21.)

United States District Court
Northern District of California

1   That uncertainty renders the breach of contract claim premature at this time. *Chandler v. State*

2   *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("[T]he plaintiff's purported injury

3   is too speculative and may never occur."); *see Tarakanov v. Lexington Ins. Co.*, 441 F. Supp. 3d

4   887, 898 (N.D. Cal. 2020) ("[Insureds'] claim is that [insurer] had an obligation to acknowledge

5   its obligation to reimburse, or put differently, accept the plaintiffs' hypothetical claim. This theory

6   does not plausibly establish a breach of contract.").

7          In its opposition, Essex argues that Steadfast's failure to reasonably settle the lawsuit

8   against the design firms is an actionable breach. *Bodenhamer v. Superior Court*, 238 Cal. Rptr.

9   177, 179–81 (Cal. Ct. App. 1987). But Essex's counterclaim provides no specific allegations

10  about efforts to settle the lawsuit and Steadfast's conduct in that process. *See Planet Bingo LLC v.*

11  *Burlington Ins. Co.*, 276 Cal. Rptr. 3d 348, 354–57 (Cal. Ct. App. 2021); *Howard v. Am. Nat'l*

12  *Fire Ins. Co.*, 115 Cal. Rptr. 3d 42, 66 (Cal. Ct. App. 2010) ("An insurer does not breach the duty

13  to settle if it never had an opportunity to settle."). Moreover, unreasonable failure to settle

14  typically gives rise to a breach of contract claim only after the insured receives a judgment in

15  excess of the policy limits (or, here, a judgment in excess of the design firms' insurance limits);

16  not until that point does the harm to the insured mature. *Safeco Ins. Co. v. Superior Court*, 84 Cal.

17  Rptr. 2d 43, 46 (Cal. Ct. App. 1999) ("If the insurer declines to settle and decides to go to trial and

18  then obtains a judgment below the settlement offer or obtains a complete defense verdict, then the

19  insured would have no cause to complain, and the insurer would have no liability. Until judgment

20  is actually entered, the mere possibility or probability of an excess judgment does not render the

21  refusal to settle actionable."). While Essex argues that loss of business goodwill is a current harm,

22  *see Howard*, 115 Cal. Rptr. 3d at 67–68; *Bodenhamer*, 238 Cal. Rptr. at 179–81, again, the

23  counterclaim contains no specific allegations of such. *See Swinerton Builders v. Am. Home Assur.*

24  *Co.*, 2013 WL 1122022, at *1 n.1 (N.D. Cal. Mar. 15, 2013) ("In those cases, however, the

25  plaintiffs had suffered damages beyond exposure to risk of liability in excess of policy limits, such

26  as damage to business reputation. In this case, Plaintiffs allege that they have suffered such

27  damages only in a conclusory fashion.").

28          Next, Essex argues that Steadfast anticipatorily breached the contract by repudiating prior

1    to the time for performance, when it denied coverage in December 2020.  But Essex does not

2    adequately support the proposition that the pure denial of coverage—without an accompanying

3    "loss" or other concrete harm to Essex—creates a ripe claim.  Similarly, Essex argues that

4    Steadfast has waived the condition precedent (i.e., a judgment or settlement in the lawsuit between

5    Essex and the design firms) by filing this declaratory relief action in bad faith.  That proposition

6    lacks support; as discussed further below, Essex has not made clear how a declaratory relief suit

7    can be the basis for a bad faith claim.

8           Accordingly, the allegations in Essex's counterclaim indicate that its claim for breach of

9    contract is unripe.

10   **II.      Essex's Bad Faith Claim**

11          Essex's counterclaim alleges that Steadfast breached its duty of good faith and fair dealing

12   by "unreasonably, oppressively, and without proper cause" withholding policy benefits, making

13   false assertions about the scope of policy coverage, holding onto premiums, failing to timely

14   communicate with Essex, and many other instances of conduct.  (Dkt. No. 8 at 13–14 ¶ 15.)

15          The bad faith claim is similarly unripe because it requires a ripe claim for breach of

16   contract.  "[W]ithout a breach of the insurance contract, there can be no breach of the implied

17   covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

18   1025, 1034 (9th Cir. 2008).

> [W]hen benefits are due an insured, delayed payment based on
> inadequate or tardy investigations, oppressive conduct by claims
> adjusters seeking to reduce the amounts legitimately payable and
> numerous other tactics may breach the implied covenant because they
> frustrate the insured's right to receive the benefits of the contract in
> prompt compensation for losses.  Absent that contractual right,
> however, the implied covenant has nothing upon which to act as a
> supplement, and should not be endowed with an existence
> independent of its contractual underpinnings.

24   *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 639 (Cal. 1995) (internal quotation marks and

25   citations omitted); *see Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 254–56 (Cal. Ct. App. 1990)

26   (rejecting insureds' argument that "delay in denying a claim constitutes bad faith even if no

27   coverage exists," *id.* at 255).  Because Essex's claim that Steadfast breached the insurance contract

28   is unripe, there is no ripe allegation that such breach was in bad faith.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Essex argues that Steadfast's initiating this declaratory action is a breach of the implied

2    covenant, citing a case upholding a malicious prosecution judgment against the insurer based on

3    its lawsuit against the insured. *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 128 Cal. Rptr.

4    2d 586 (Cal. Ct. App. 2002). Malicious prosecution is a distinct tort, predicated on a previous

5    lawsuit that the defendant pursued "to a legal termination in the plaintiff's favor." *Id.* at 597.

6    Essex has not cited authority for the proposition that Steadfast's declaratory action itself could

7    constitute a breach of the implied covenant of good faith and fair dealing, as opposed to fodder for

8    a future malicious prosecution claim.

9    **III.    Steadfast's Declaratory Judgment Claim**

10    It follows from the above that Steadfast's declaratory judgment claim may be equally

11    unripe. If the duty to defend is at issue, an insurer's declaratory judgment claim may be ripe

12    before any underlying liability is established. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144

13    (9th Cir. 1994) (holding that a "case or controversy" exists where insurer "seeks a declaration

14    regarding its obligations in the pending state court liability suit against" insured). Here, however,

15    only the duty to indemnify is at issue. Because Essex might not prevail in its suit against the

16    Design Professionals, or it might win a judgment that is fully covered by the Design Professionals'

17    Insurance, Steadfast's duty to indemnify Essex may never ripen into a live case or controversy.

18    Thus, a decision by this Court on Steadfast's declaratory judgment claim would be purely

19    advisory. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)

20    ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to

21    adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III

22    of the Constitution.").

23    The Court has an independent obligation to ensure it has subject matter jurisdiction. *Ray*

24    *Charles Found. v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015) ("[I]t is our duty to consider *sua*

25    *sponte* whether a suit is ripe, because the question of ripeness goes to our subject matter

26    jurisdiction to hear the case." (internal quotation marks and citation omitted)). Accordingly,

27    Steadfast shall show cause as to why its complaint should not be dismissed without prejudice as

28    unripe, if it believes there are grounds to show cause. *See Chandler v. State Farm Mut. Auto. Ins.*

1    *Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *United States v. Antelope*, 395 F.3d 1128, 1132 (9th Cir.

2    2005).

3                                 **CONCLUSION**

4        For the reasons explained above, Steadfast's motion to dismiss is GRANTED.  Essex's

5    counterclaim is DISMISSED without prejudice as unripe.

6        On or before September 3, 2021, Steadfast shall SHOW CAUSE as to why its complaint

7    should not be dismissed without prejudice as unripe, if it believes there are grounds to show cause.

8        This Order disposes of Docket No. 13.

9        **IT IS SO ORDERED.**

10   Dated: August 20, 2021

11

12

13                                             JACQUELINE SCOTT CORLEY
                                          United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*

8